IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Pearl Valley Farms, Inc.,

Plaintiff,

v.

LS2C Logistics, Inc., KDavis and Associates, Inc., Fastwise, LLC, and Lineage Logistics, LLC,

Defendant.

Case No. 3:25-cv-50470

**COMPLAINT**

**Jury Demanded**

Plaintiff Pearl Valley Farms, Inc. ("Pearl Valley Farms" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendants LS2C Logistics, Inc. ("LS2C"), KDavis and Associates, Inc. ("KDavis"), Fastwise, LLC ("Fastwise"), and Lineage Logistics, LLC, doing business as Lineage ("Lineage"), including subsidiaries or other affiliated entities involved in the transportation, warehousing, or handling of Plaintiff's shipment, for negligence, breach of contract, conversion, and/or for recovery under the Carmack Amendment (49 U.S.C. § 14706).

## INTRODUCTION

1. This action arises from the theft of a truckload of eggs worth approximately $190,000 shipped by Plaintiff to its big box retail customer in Dallas, Texas. On March 6, 2025, Plaintiff engaged its broker, LS2C, to arrange transportation of the shipment, providing LS2C the value of the load, agreed transportation rate, and consignee information. LS2C confirmed receipt of these details and subsequently booked the load with a party representing itself to LS2C as Greg F. Kuhn Hauling, Inc. ("Kuhn Hauling"). The transportation job was then placed with a second carrier, KDavis. Operating a KDavis truck, the driver was provided the time and place to pick up

Plaintiff's shipment and directed to check in as Kuhn Hauling. Thereafter, the shipment was diverted—presumably by Fastwise, the party named for billing on the fraudulent bill of lading—to a different consignee, and delivered to an unauthorized location, a cold storage facility owned and/or operated by Lineage. This action includes claims for damages suffered by Plaintiff as a result of the diversion of its shipment, which directly resulted from Defendants' conduct, including negligence, breach of contractual obligations, conversion, and statutory liability under the Carmack Amendment, as more fully set forth herein.

**THE PARTIES**

2. Plaintiff Pearl Valley Farms, Inc., the shipper, is a corporation organized under the laws of the State of Illinois, with its principal place of business in Pearl City, Illinois.

3. Defendant LS2C Logistics, Inc. is a corporation organized under the laws of the State of South Carolina, with its principal place of business in Mount Pleasant, South Carolina. LS2C (DOT #2226738, MC-389860) is registered with the United States Department of Transportation (USDOT) as a broker pursuant to the registration requirements in 49 U.S.C. § 13904 and is defined as a broker under 49 U.S.C. § 13102(2).

4. Defendant KDavis and Associates, Inc. is a corporation organized under the laws of the State of California, with its principal place of business in Santa Clarita, California. KDavis (DOT #2030094; MC-713129) is registered with the USDOT as a motor carrier and holds federal authority from FMCSA to operate as a for-hire motor carrier in both California and interstate commerce.

5. Defendant Fastwise LLC is a limited liability company organized under the laws of the State of Ohio with its principal place of business in Mason, Ohio. Fastwise (DOT #3995326, MC-1500032) is registered with the USDOT as a broker pursuant to the registration requirements

in 49 U.S.C. § 13904 and is defined as a broker under 49 U.S.C. § 13102(2).

6. Defendant Lineage Logistics, LLC, doing business as Lineage, are entities organized under the laws of the State of Delaware, with principal places of business in Novi, Michigan. Upon information and belief, Lineage Logistics, LLC has been rebranded and absorbed into Lineage, Inc., a publicly traded real estate investment trust (REIT) listed on the Nasdaq under the ticker symbol LINE. Lineage, Inc. operates through various subsidiaries and operational arms, including but not limited to Lineage Transportation, LLC (USDOT #3465763, MC #891103) and Lineage Freight Management, LLC (USDOT #2242714, MC #00653142). Both Lineage Transportation, LLC and Lineage Freight Management, LLC are registered with USDOT and hold federal authority from FMCSA to operate, respectively, as a for-hire motor carrier and a broker in interstate commerce.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff is alleging violations of federal law and regulation and the claim arises under 49 U.S.C. § 14706 (the Carmack Amendment).

8. Federal district courts have original subject matter jurisdiction over this action involving the interstate shipment of goods via motor carrier worth nearly $200,000, which is in excess of the statutory requirement of $10,000, not including interest and costs. 28 U.S.C. 1337(a).

9. This Court has supplemental jurisdiction over the state law claims asserted because they arise from a common nucleus of operative fact and are so related to the facts and Carmack Amendment claim that they form part of the same case or controversy under Article III of the United State Constitution. 28 U.S.C. § 1367(a).

10. This Court has personal jurisdiction over Defendant LS2C because it is a broker

who regularly conducts business in this district, including through providing brokerage services to Plaintiff.

11. This Court has personal jurisdiction over Defendant KDavis and Associates, Inc. pursuant to 49 U.S.C. § 14706(d)(1) as the motor carrier that delivered Pearl Valley Farms' shipment and pursuant to 49 U.S.C. § 14706(d)(2) as an interstate motor carrier responsible for causing the loss of Pearl Valley Farm's shipment.

12. This Court has personal jurisdiction over Defendants Fastwise and Lineage because they regularly conduct business in this district.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district. Specifically, the shipment that is the subject of this action was picked up in this district, and, to the best of Plaintiff's knowledge, the wrongful acts resulting in the conversion of the shipment occurred or were effectuated at the time and place of pickup within this district.

14. Venue in this Court is proper pursuant to 49 U.S.C. § 14706(d)(1) and 14706(d)(2) because Defendant KDavis operated within this district and this is the judicial district in which the loss or damage occurred.

## FACTUAL ALLEGATIONS

15. For nearly thirty years, Pearl Valley Farms has been committed to producing the finest eggs and related products in an environmentally responsible manner. Pearl Valley Farms' products are widely sought and commercially available in thirty-five (35) states.

16. On March 5, 2025, national retailer Costco placed an order for 30 pallets of conventional caged eggs. A true and correct copy of that order is attached hereto as Exhibit A.

17. Pearl Valley Farms reached out to its longtime broker, Defendant LS2C, to arrange

for transport of the load to the Costco facility in Dallas, Texas.

18. Pearl Valley Farms shared the details of the shipment—including the product, product value, pickup date, delivery date, and delivery address. At the end of its request, Pearl Valley Farms added, in bold and highlighted text, to "Please ensure these instructions are sent to the driver delivering this load."

19. Defendant LS2C confirmed receipt.

**A. Defendant LS2C Logistics, Inc. Selects the Carrier**

20. Defendant LS2C claims to link shippers to the best, vetted carriers. It promotes itself as the single point of contact to arrange for the timely pick-up and delivery of a shipper's goods.

21. In this instance, Defendant LS2C selected Kuhn Hauling, as the carrier, clearly without the diligence and forethought that Pearl Valley Farms expected and was promised.

22. The Federal Motor Carrier Safety Administration ("FMCSA") requires carriers to maintain accurate company records by updating the MCS-150 form at least every two years. This publicly available data includes critical information such as operating authority, company status, insurance coverage, safety history, and fleet details, all of which are essential for brokers to evaluate a carrier's fitness and authority to transport goods in interstate commerce.

23. It is an established industry standard that brokers review the information maintained by FMCSA prior to engaging a carrier. This includes verifying that the carrier holds valid operating authority, has a safety record consistent with responsible commercial practices, and maintains adequate insurance coverage. Brokers are also expected to conduct independent due diligence to verify the carrier's capacity and suitability for the specific shipment.

24. Defendant LS2C failed to meet these basic standards. Prior to arranging for a

carrier to pick up Plaintiff's shipment, Defendant LS2C appears to have relied on a third-party commercial database — such as Logistics Locator, Carrier411, or a similar platform — to evaluate carrier suitability. These platforms are not maintained or sanctioned by the federal government and may contain outdated or incomplete information. Defendant LS2C either did not consult the official records maintained by FMCSA, or it disregarded the fact that Kuhn Hauling's records were outdated, as Kuhn Hauling had not updated its MCS-150 registration since October 2019, a clear indication of noncompliance and potential operational issues.

25. More troublingly, LS2C also overlooked that Kuhn Hauling was, upon information and belief, a dump truck business with no apparent equipment or operational capacity to transport Pearl Valley Farms' load of eggs. This mismatch between the shipment requirements and the carrier's capabilities reflects a gross failure of vetting, logistics planning, and professional judgment.

26. At some point between when LS2C identified and engaged Kuhn Hauling for carriage and the scheduled collection of the shipment, responsibility for the transportation was transferred from Kuhn Hauling to Defendant KDavis.

**B. The Carrier Took Possession of the Shipment**

27. On March 13, 2025, a driver for Defendant KDavis arrived to take possession of Pearl Valley Farms' egg shipment, which was in good condition.

28. At the apparent direction of Fastwise, the KDavis driver checked in as a representative of Kuhn Hauling and asked for the load going to Costco in Dallas, Texas.

29. Pearl Valley Farms expected its load of eggs to be delivered to Costco on March 15, 2025, which was a Saturday. Instead, Pearl Valley Farms learned that its shipment had not been delivered when a Costco representative reached out on Monday, March 17, to inquire about

the status.

### C. Broker's Negligence Enabled the Theft of Pearl Valley Farms' Eggs

30. Instead of its eggs being safely transported by a vetted carrier to Texas, Pearl Valley Farms' eggs were misdirected to a recipient in Ontario, California.

31. The driver reports that the shipment was unloaded by staff at a warehouse upon his arrival in Ontario.

32. Defendant LS2C was aware that the freight industry has long been plagued by scams known as "double brokering," in which bad actors exploit gaps in oversight to misappropriate shipments. Despite this knowledge, LS2C failed to exercise reasonable diligence to safeguard against such schemes.

33. In a typical double brokering scheme, a fraudster uses the identification of a legitimate company to pose as a carrier and book a load with a broker. The fraudster then reposts the load on a load board posing as a brokerage whose identity has also been stolen, in order to secure a legitimate carrier. The carrier is subsequently instructed to deliver the shipment to a new location, typically one where the orchestrator can unload the shipment and sell the product quickly.

34. In the freight brokerage industry, it is standard practice for reputable firms to implement robust safeguards against double brokering, fraudulent carrier substitution, and other deceptive logistics practices. These safeguards typically include carrier vetting protocols, load tracking systems, contractual restrictions, and verification procedures.

35. Defendant LS2C either failed to implement adequate defenses and safeguards or failed to follow them in this case.

36. As a result, Pearl Valley Farms has suffered losses totaling no less than $190,512.00, representing the value of the egg shipment, as well as consequential damages,

attorneys' fees, and costs incurred in seeking indemnification from the carriers' insurers.

### D. Pearl Valley Farm's Insurance Claims Were Denied

37. Upon discovering that its eggs had been stolen, Pearl Valley Farms promptly contacted its broker and the carrier in an effort to mitigate the loss and recover the shipment.

38. Pearl Valley Farms spoke first with Defendant LS2C but received only limited support and no practical help in recovering the eggs beyond the filing of a police report. Indeed, LS2C's insurer, Avalon Risk Management, declined to cover the loss on April 8, 2025.

39. Pearl Valley Farms subsequently contacted Kuhn Hauling, whose insurer, Ohio Mutual, also declined coverage for the loss on September 11, 2025.

40. Pearl Valley Farms sought recourse from the carrier whose driver had actually transported the eggs: Defendant KDavis. Pearl Valley Farms filed a claim directly with KDavis' insurance carrier Benchmark Specialty Insurance. However, their authorized claims representative, Triton Claim Management, LLC also denied the claim on May 16, 2025.

41. Pearl Valley Farms also sought recovery from Lineage for its role in the diversion of Pearl Valley Farms' shipment. As of the date of filing, Lineage has not responded to the demand.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF:
### Violation of the Carmack Amendment, 49 U.S.C. § 14706, *et seq.*
### (Against Defendant KDavis and Associates, Inc.)

42. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. Plaintiff tendered the entire shipment of eggs in good condition and without any damage, based on representations that Kuhn Hauling would be picking up the load. Plaintiff believed that the eggs were entrusted to a verified carrier identified as Kuhn Hauling, both because LS2C was responsible for arranging secure shipment and because the KDavis driver checked in

with Plaintiff as a representative of Kuhn Hauling.

44. Kuhn Hauling—to the extent it was involved—and KDavis failed to deliver the eggs to the recipient identified on the bill of lading that Plaintiff provided to LS2C.

45. The eggs were never delivered to their intended recipient in Texas but instead were diverted to an unauthorized party and delivered to an incorrect location across the country in California, where the unauthorized party took possession of the entire shipment.

46. KDavis is liable for the full value of the cargo loss as a carrier under the Carmack Amendment.

47. Plaintiff has suffered damages totaling no less than $190,512.00 as a direct and proximate result of KDavis' actions and omissions.

48. No part of these damages has been paid, although duly demanded in accordance with the federal regulations implementing the Carmack Amendment (49 C.F.R. § 370.3).

WHEREFORE, Plaintiff Pearl Valley Farms, Inc. prays that this Court enter judgment in its favor and against Defendant KDavis and Associates, Inc., awarding:

a. Compensatory damages in an amount to be proven at trial, but no less than $190,512.00, representing the actual loss of the egg shipment;

b. Consequential damages as permitted by law, including but not limited to damages resulting from the failure to deliver the shipment to the intended recipient;

c. Attorneys' fees and costs incurred in connection with this suit, to the extent permitted by law; and

d. Such other and further relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF:**
**NEGLIGENCE**
**(Against Defendant LS2C Logistics, Inc.)**

49. Plaintiff realleges and incorporates by reference each and every allegation

contained in the foregoing paragraphs as if fully set forth herein.

50. Defendant LS2C has served as Plaintiff's logistics broker for many years, handling transportation arrangements and coordinating freight movement.

51. At all relevant times, Defendant LS2C had a duty to Plaintiff to use reasonable care in the selection of carriers for the delivery of Plaintiff's goods.

52. Defendant LS2C breached its duty to Plaintiff when it failed to use appropriate care in selecting Kuhn Hauling to act as carrier of Plaintiff's egg shipment at issue, evidenced by the stale FMSCA information, the reassignment of the carriage contract to another, and the ultimate loss of the egg shipment.

53. Defendant LS2C breached its duty of care by failing to verify with a reliable source that Kuhn Hauling's information was accurate and up-to-date before arranging carriage. Specifically, Defendant LS2C either failed to consult the official records maintained by the FMCSA — which would have revealed that the carrier had not updated its MCS-150 registration since October 2019 — or it knowingly disregarded that the information was outdated. Instead, Defendant LS2C relied on a third-party commercial database not maintained by the federal government, which did not reflect the carrier's noncompliance or operational limitations. This failure to conduct proper due diligence directly contributed to the selection of an unqualified carrier and the resulting harm to Plaintiff.

54. Plaintiff suffered losses totaling no less than $190,512.00 as a direct and proximate result of Defendant LS2C's above-described negligent actions and omissions.

WHEREFORE, Plaintiff Pearl Valley Farms, Inc. prays that this Court enter judgment in its favor and against Defendant LS2C Logistics, Inc. awarding

a. Compensatory damages resulting from LS2C's negligent selection of the carrier

for Plaintiff's shipment, causing a loss of no less than $190,512.00;

b. Consequential damages for harm to Plaintiff's business relationship with its customer, including but not limited to any lost business opportunities or lost profits resulting from the customer's decision to procure eggs from another supplier;

c. Attorneys' fees and costs incurred in connection with this suit; and

d. Such other and further relief as the Court deems just and proper.

**THIRD CLAIM FOR RELIEF:**
**BREACH OF CONTRACT**
**(Against Defendant LS2C Logistics, Inc.)**

55. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Although the parties did not execute a written contract, they established a binding agreement and mutual expectations through a consistent course of dealing.

57. Through its representations and prior actions, LS2C undertook and promised to use its best efforts to connect Plaintiff with appropriate and qualified carriers.

58. Plaintiff regularly relied on LS2C to select suitable carriers to deliver Plaintiff's products to its customers and compensated LS2C for providing these services.

59. In connection with the shipment at issue, Plaintiff engaged LS2C to arrange for the transportation of a shipment of eggs to its customer in Dallas, Texas.

60. LS2C agreed and arranged for Kuhn Hauling to transport the shipment.

61. LS2C failed to exercise reasonable care to ensure that Plaintiff's egg shipment was placed with a reliable and qualified carrier.

62. Furthermore, LS2C failed to prevent the unauthorized reassignment of the contract by Kuhn Hauling to Defendant KDavis without Plaintiff's or LS2C's knowledge or consent.

63. Defendant KDavis failed to deliver Plaintiff's shipment of eggs during interstate transportation, and the cargo was never delivered to the intended recipient.

64. As a direct and proximate result of these failures, Plaintiff suffered damages, including the loss of the value of its shipment of eggs.

65. LS2C's conduct constitutes a breach of contract, which directly caused the loss to Plaintiff.

WHEREFORE, Plaintiff Pearl Valley Farms, Inc. prays that this Court enter judgment in its favor and against Defendant LS2C Logistics, Inc. for LS2C's breach of contract, granting compensatory damages, as well as any other and further relief as to the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF:**
**CONVERSION**
**(Against Defendants Fastwise, LLC and Lineage Logistics, LLC )**

66. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. Plaintiff was the rightful owner of the shipment of eggs. Plaintiff's intention was to entrust its shipment to Kuhn Hauling for transportation and delivery to the intended customer facility in Dallas, Texas.

68. Instead, Defendant Fastwise wrongfully and without authorization took control of the shipment through its communications with the KDavis driver, thereby depriving Plaintiff of its property.

69. Defendant Fastwise subsequently directed the shipment to Ontario, California, using a false bill of lading identifying Fastwise in a section labeled "3rd Party Billing." A true and correct copy of that bill of lading is attached hereto as Exhibit B. That same bill of lading identified the cold storage facility owned and/or operated by Lineage as the consignee of the shipment.

70. Upon arrival in Ontario, California, personnel at the facility were granted access to, unloaded, and took possession of the full shipment of Pearl Valley Farms' eggs. The address provided by the driver as the delivery site is situated within the same commercial logistics corridor in the Inland Empire metropolitan area as the Lineage Riverside facility.

71. Defendants substantially interfered with Plaintiff's possessory rights by knowingly, intentionally, and wrongfully taking control of Plaintiff's property and preventing Plaintiff from accessing or reclaiming it. This interference was unauthorized and inconsistent with Plaintiff's ownership and right to possession.

72. Plaintiff did not consent to Defendants' actions. Defendants' conduct constitutes conversion. As a direct and proximate result of this wrongful conduct, Plaintiff has suffered damages totaling no less than $190,512.00.

WHEREFORE, Plaintiff Pearl Valley Farms, Inc. prays that this Court enter judgment in its favor and against Defendants Fastwise, LLC and Lineage Logistics, LLC, awarding

a. Compensatory damages resulting from Defendants' wrongful conversion, in an amount no less than $190,512.00;
b. Consequential damages for harm to Plaintiff's business relationship with its customer, including but not limited to any lost business opportunities or lost profits resulting from the customer's decision to procure eggs from another supplier;
c. Attorneys' fees and costs incurred in connection with this suit; and
d. Such further relief as the Court deems just and proper.

73. Plaintiff demands a jury trial.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH, LLP

Dated: November 12, 2025

By: */s/ Colby Anne Kingsbury*

Colby Anne Kingsbury
320 South Canal Street, Suite 3300
Chicago, Illinois 60606, USA
colby.kingsbury@faegredrinker.com
Telephone: +1 312 212 6573
Facsimile: +1 312 569 3000

H. Joy Sharp (*pro hac vice* forthcoming)
joy.sharp@faegredrinker.com
1500 K Street, NW, Suite 1100
Washington, DC 20005
Telephone: +1 202 230 5000
Facsimile: +1 202 842 8465

***Attorneys for Pearl Valley Farms, Inc.***