IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| PEARL VALLEY FARMS, INC.,<br><br>PLAINTIFF,<br><br>V.<br><br>LS2C LOGISTICS, INC., ET AL.<br><br>DEFENDANTS. | CASE NO. 3:25-CV-50470<br><br>HONORABLE IAIN D. JOHNSTON |

**MEMORANDUM OPINION AND ORDER**

"How can you whip cream without whips? Whipped cream isn't whipped cream at all unless it's been whipped with whips. Just as a poached egg isn't a poached egg unless it's been stolen from the woods in the dead of night!" Roald Dahl, *Charlie and the Chocolate Factory* 86 (1964). Unlike Willy Wonka's poached eggs, the eggs leading to this case were not poached in the dead of night, but rather in broad daylight—misdirected over a thousand miles from Dallas, Texas to Ontario, California. Complaint [1] at ¶¶ 28-30. Pearl Valley Farms now seeks to hold Defendants LS2C Logistics, Inc. ("LS2C"), KDavis & Associates, Inc. ("KDavis"), Fastwise, LLC ("Fastwise"), and Lineage Logistics, LLC ("Lineage") responsible. LS2C has responded with a motion to dismiss the claims against brought against it. For the reasons below, the motion to dismiss [18] is granted in part and denied in part. Count II is dismissed.

**Background**[1]

In March 2025, national big box retailer Costco placed an order for 30 pallets of conventional caged eggs with Pearl Valley Farms. Complaint [1] at ¶ 16. (Yes, that's a lot of eggs.) To effectuate the order, Pearl Valley contacted LS2C—a broker—to arrange for the transportation of the eggs from Pearl City, Illinois to Dallas, Texas. *Id.* at ¶¶ 2, 17. LS2C selected Kuhn Hauling as its carrier, relying on a third-party commercial database to evaluate carrier suitability. *Id.* at ¶¶ 21, 24. Kuhn Hauling was a dump truck business without the operational capacity to transport a large quantity of eggs across the country. *Id.* at ¶ 25. Kuhn subsequently transferred its responsibilities to KDavis. *Id.* at ¶ 26.

KDavis took possession of the egg shipment on March 13, 2025, at which time the eggs were in good condition. *Id.* at ¶ 27. The KDavis driver checked in with Pearl Valley as a representative of Kuhn Hauling. *Id.* at ¶ 28. The eggs were scheduled to arrive at the Dallas, Texas Costco store on March 15, 2025. *Id.* at ¶ 29. When they did not arrive by the following Monday, March 17, 2025, a Costco representative contacted Pearl Valley to inquire on the status. *Id.* At that time, it was discovered that the eggs had been misdirected to a recipient in Ontario, California. *Id.* at ¶ 30. The fraudulent bill of lading used to divert the shipment lists Fastwise as the billing party and Lineage as the consignee. *Id.* at ¶ 69; ex. 2.

---

[1] These allegations are taken from the Complaint [1]. The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Lineage also owns or operates the cold storage facility where the eggs were delivered. *Id.* at ¶ 1.

Pearl Valley has now brought four counts against the Defendants: (i) a violation of the Carmack Amendment, 49 U.S.C. § 14706, et seq., against KDavis; (ii) negligence against LS2C; (iii) breach of contract against LS2C; and (iv) conversion against Fastwise and Lineage. *Id.* at ¶¶ 42-72. LS2C filed this motion to dismiss Counts II and III. Dkt. 18. KDavis, Fastwise, and Lineage have each yet to file an appearance or otherwise respond.

**Legal Standard**

Federal Rule of Civil Procedure 8 requires only that a complaint contains a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as a prayer for the relief sought. Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper when "the allegations …, however true, could not raise a claim of entitlement to relief." *Id.* at 558. The Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The Court may also consider exhibits attached to the complaint and documents other than the

complaint "when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2013). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

**Discussion**

    **i.    Preemption**

LS2C alleges that the negligence claim brought by Pearl Valley Farms fails to state a claim because it is preempted by the Federal Aviation Administration Authority Act of 1994, 49 U.S.C. § 14501 ("the Act"). Specifically, § 14501(c) relates to motor carriers. In relevant part, it reads:

> (1) General Rule
> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier… or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.
> (2) Matters Not Covered. Paragraph 1—
>   (a) Shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization…

49 U.S.C. § 14501(c)

4

Evaluating the text, as we must do,[2] § 14501(c) is a quintessential instance of express preemption. *See Nationwide Freight Sys., Inc. v. Ill. Com. Com'n.*, 784 F.3d 367, 372-73 (7th Cir. 2015). Plainly, Illinois is broadly prohibited from enacting or enforcing laws that intrude on the "price, route, or service of any motor carrier," unless the restrictions are narrowly related to the safety regulatory authority of the state "with respect to motor vehicles," including highway route controls, size of the vehicle, or the hazardous nature of the cargo. 49 U.S.C. § 14501(c).

Express preemption in this context has been interpreted to prohibit even indirect state law effects on motor carriers' rates, routes, and services. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992)). It also includes common law tort claims. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-82 (2014). But state actions that only affect motor carriers in a "tenuous, remote, or peripheral" manner are not preempted. *Morales*, 504 U.S. at 390 (1992) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).

Narrowing the analysis down to whether negligence is captured within the safety exception, little case law exists. What does exist, splits.

In some courts, negligence has been viewed as outside the confines of the exception and thus preempted by the Act. *See, e.g., Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 458-60 (7th Cir. 2023); *Non Typical, Inc. v. Transglobal Logistics Grp.,*

---

[2] The Act's text "necessarily contains the best evidence of Congress' preemptive intent." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

5

*Inc.*, Nos. 10-C-1058, 11-C-156, 2012 U.S. Dist. LEXIS 73452 at *8-9 (E.D. Wis. May 24, 2012); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F.Supp.2d 638, 641-43 (N.D. Tex. 2010); *Huntington Operating Corp. v. Sybonney Exp., Inc.*, Civ. Act. No. H-08-781, 2010 U.S. Dist. LEXIS 55591 at *7-8 (S.D. Tex. May 11, 2010). In others, negligence is saved from preemption by the Act's safety exception detailed in § 14501(c)(2)(a). *See, e.g., Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020); *Wardingley v. Ecovyst Catalyst Techs., LLC*, 639 F.Supp.3d 803, 809 (N.D. Ind. 2022); *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268-70 (11th Cir. 2023).

* * *

Pearl Valley doesn't dispute that its negligence claim is preempted by the text of § 14501(c)(1), arguing only that it is saved by the safety provision of the Act, § 14501(c)(2)(A). Plaintiff's Response [23] at 3. On the contrary, the safety provision doesn't capture this type of broker-selection negligence alleged by the complaint.

The safety exception limits the Act's preemptive reach. The statute doesn't "restrict the safety regulatory authority of a State *with respect to motor vehicles.*" 49 U.S.C. § 14501(c)(2)(A) (emphasis added); *Ye*, 74 F.4th at 460. For the same reasons thoroughly articulated in *Ye*—including the statutory text, the omission of "brokers" from the safety exception, the indirect relationship between brokers and motor vehicle safety, and the lack of other safety standards related to motor vehicle brokers—common law negligence in the context of a contracted broker doesn't fall within the scope of § 14501(c)(2)(A). *Ye*, 74 F.4th at 460-64.

Even courts that have broadly interpreted the Act's safety exception have found it to be limited by the plain meaning of its terms. *Aspen*, 65 F.4th at 1268-70 (finding that negligence claims—even those not involving personal injury—are subject to the safety exception, but dismissing the case for not being "with respect to motor vehicles.").

Pearl Valley attempts to distinguish between "state policy-making and judicial application of general tort principles," faulting *Ye* for "collaps[ing] the statutory distinction" into a single controversy. Plaintiff's Response [23] at 3-4. This purported distinction fails on the face of the statute. There is no distinction made in the plain language of the Act that would permit "judicial application of general tort principles," while prohibiting "state policy-making." Nor does such a proposed distinction align with Supreme Court precedent. "What is important… is the effect of a state law, regulation, or provision, not its form, and the [statute's] deregulatory aim can be undermined just as surely by a state common-law rule as it can by a state statute or regulation." *Northwest, Inc.*, 572 U.S. at 283. "State tort law… disrupts the federal scheme no less than state regulatory law to the same effect. Indeed, one would think that tort law, applied by juries under a negligence or strict-liability standard, is less deserving of preservation." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 325 (2008).

Pearl Valley further argues that denying them a negligence claim would create an "unintended liability vacuum" between the Act and the Carmack

7

Amendment. Plaintiff's Response [23] at 4. They belie their own claim, however, by having also brought a breach of contract claim against LS2C, discussed below.

Because the Act expressly preempts Pearl Valley's claim, and because common law negligence in a contracted broker relationship doesn't restrict the safety regulatory authority of a state with respect to motor vehicles, Pearl Valley has failed to state a claim for negligence upon which relief may be granted.[3] The motion to dismiss is granted as to Count II.

### ii. Implied Contract

LS2C next alleges that no contract was formed with Pearl Valley sufficient to state a claim for breach of contract.

At its core, a contract in Illinois requires an offer, acceptance, and consideration.[4] *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F.Supp.3d 825, 836 (N.D. Ill. 2024) (citing *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 151 (2006)). A contract needn't be in writing to be enforceable; however, a contract implied-in-fact must contain all the elements of an express contract, as well as an added element of mutual intent to contract. *Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825, 835 (N.D. Ill. 2009) (citing *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007); *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 298 Ill.App.3d 146, 154 (1998)).

---

[3] The Court need not reach LS2C's alternative argument that Pearl Valley's claim is barred by the Illinois Economic Loss Doctrine.

[4] Both parties agree that Illinois is the appropriate forum state under the *Erie* doctrine choice of law principles. *Erie R. Co. v. Tompkins*, 304 U.S. 64; Defendant's Motion [18] at 8-9; Plaintiff's Response [23] at 5 n.2.

8

An implied-in-fact contract is "a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 840 F.2d 1319, 1330 (7th Cir. 1988) (internal quotation omitted) (applying Illinois law). An implied-in-fact contract may be proved by "circumstances showing that the parties intended to contract and by the general course of dealing between them." *Schivarelli v. Chi. Transit Auth.*, 355 Ill.App.3d 93, 291 (2005); *see also, Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 726 (7th Cir. 2010) ("That is the significance of 'in fact': the circumstances allow an inference that the parties had a deal (a 'meeting of the minds') even though there was no statement to that effect.") (applying Illinois law).

Pearl Valley could have done a better job describing the relationship between themselves and LS2C in its complaint. However, in deciding a motion to dismiss— although not best practice (and one that this Court despises)—plaintiffs may allege facts in a brief opposing dismissal and those new allegations "may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)).

Here, taking the complaint and response in a light most favorable to Pearl Valley, it has adequately pled the existence of an implied-in-fact contract to survive

a motion to dismiss. Pearl Valley had a lot of eggs it wanted to get from Illinois to Texas and "engaged" their "longtime" broker LS2C to make that happen. Complaint [1] at ¶¶ 1, 17; *see also*, Defendant's Response [23] at 7 (confirming that Pearl Valley "paid the agreed-upon compensation for LS2C's services"). LS2C took steps to have those eggs delivered to Dallas. Complaint [1] at ¶ 21. The course of dealing described by Pearl Valley allows the Court to reasonably infer the existence of an offer, acceptance, consideration, and mutual intent. The delivery didn't happen, ostensibly because LS2C's choice of carrier was a fraud, poorly selected by LS2C. *Id.* at ¶¶ 24-26, 30. This is breach. And indeed, it seems unlikely that LS2C would take the same "no contract" stance if the eggs had been delivered to Dallas as scheduled and LS2C received no compensation.

The motion to dismiss is denied as to Count III.

**Conclusion**

For the above reasons, the motion to dismiss [18] is granted in part and denied in part. Count II is dismissed while Count III may proceed.

Entered: February 12, 2026                By: _____
                                          Iain D. Johnston
                                          U.S. District Judge